# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street, 10th Floor
New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

Tamara Giwa
*Executive Director*

Jennifer L. Brown
*Attorney-in-Charge*

January 13, 2025

**Via ECF and Email**
Honorable Arun Subramanian
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:  **United States v. Reality Lucas**
    **24 Cr. 143 (AS)**
    **21 Cr. 382 (AS)**

Dear Judge Subramanian,

I write on behalf of Mr. Lucas, in reply to the government's sentencing letter, Dkt. No. 36 (Gov't Sent. Ltr.), and in advance of the hearing[1] and sentencing the Court scheduled for January 15, 2025, see Dkt. Nos. 41, 49.

The government's request for a sentence that is three times longer than the bottom of the applicable guidelines range should be rejected outright. The government's requested sentence – or a sentence anywhere close to it – would create undue disparities by irrationally distinguishing this case from the hundreds of § 922(g) cases this district sees every year; is unsupported by the two outlier cases cited by the government that had far more aggravating facts; and is not justified by a single one of the reasons the government points to, individually or collectively. To the contrary, the appropriate sentence is what the defense is advocating for: a sentence of a year and one day, to be followed by supervised release, with six months in a halfway house, alternative to incarceration programming, intensive mental health treatment, outpatient drug treatment, and other conditions. See Dkt. No. 34 (Lucas Sent. Ltr.)

**An above-guidelines sentence would create undue disparities and is inconsistent with the sentencing practices in this district and across the country.**

In its letter, the government writes that "it is not uncommon for defendants charged with firearm offenses to receive above Guidelines sentences in this district." Gov't Sent. Ltr. at 5. Put most plainly: that is false.

---

[1] The defense maintains its objection to the Fatico hearing. See Dkt. No. 39.

The available sentencing data demonstrates this falsity. The statistics provided in the Judiciary Sentencing Information (JSIN) in Mr. Lucas' PSR show that the 1135 defendants who had Mr. Lucas's offense level and criminal history category (and were sentenced using U.S.S.G. § 2K2.1 in the last five fiscal years) had an average sentence imposed of 14 months (i.e. just below the bottom of the range). The median sentence was 15 months (i.e. the bottom of the range). See PSR; see also Lucas Sent. Ltr.[2] Moreover, Mr. Lucas' sentencing submission lays out a series of cases that demonstrate why our requested sentence would prevent unwarranted disparities. Thus, the government's request should be rejected as contrary to the statute's bar on undue sentencing disparities. See 18 U.S.C. § 3553(a)(6).

In addition, the government's own case citations, see Gov't Sent. Ltr. at 5, belie its request. In an effort to support its claim that above-guidelines sentences are "not uncommon" in § 922(g) cases, the government cites to two outlier cases.[3] And those two cases actually demonstrate that above-guidelines sentences are only handed down in gun cases in extremely unique and grave circumstances – none of which apply here. Therefore, it is just wrong to lump Mr. Lucas' case in with the outliers the government relies upon; both cases had aggravating factors far more serious than those present in this case:

In United States v. Justin Morales, 24 Cr. 84 (PAE), the guidelines range was 46 to 57 months and Judge Engelmayer imposed a variance 9 months above the top of the range, i.e. 66 months. See Dkt. No. 58, 61. In doing so, the Court rejected the government's request for 84 months' imprisonment. See id. In that case, the defendant "shot an individual point blank in broad daylight" – specifically shooting a victim in his right thigh, such that the victim required staples to close his gunshot wound – and the defendant did so in the vicinity of "several innocent individuals." See Dkt. No. 58. Moreover, the defendant committed the shooting in that case just seven months after he had finished a 60-month sentence for another shooting.

In United States v. Anthony Gomez, 23 Cr. 434 (JMF), the guidelines range was 46 to 57 months and Judge Furman sentenced the defendant to 120 months' imprisonment (and still rejected the government's request for 180 months). Dkt. Nos. 20, 21, 23. In that case, the defendant, while running and being pursued by police officers, lifted his arm and "aimed his gun" at police officers three times; the second time, he fired at them. The defendant "committed

---

[2] Nationally, in Fiscal Year 2023, 49.7% of § 922(g) sentences were within the guidelines range; 9.1% received downward departures; 0.8% received upward departures and 40.2% received variances. Of the variances, 89.1% were downward variances. See U.S.S.C. Quick Facts, 18 U.S.C. § 922(g) Firearms Offenses, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Felon_In_Possession_FY23.pdf.

[3] The government includes a third case citation, that was neither a § 922(g) case nor did the defendant receive an above-guidelines sentence. United States v. Malik Crocker, 13 Cr. 414 (SHS), was a drug case where the defendant received a below-guidelines sentence. See Dkt. Nos. 565, 570. Years later, the defendant was found to have violated his supervised release when "he fired two shots in the direction of [a] driver of [a] car." Dkt. No. 834. For that violation – not a new criminal case – he was sentenced to 30 months' imprisonment (i.e. below the government's request for 36 months). See id.

this shooting in broad daylight, in a residential neighborhood, on a sidewalk with numerous people nearby, including a young family" that had to "duck[] and run for cover." Dkt. No. 20. At the time he committed this shooting, the defendant was still living in a BOP halfway house, where he was serving the remainder of a 120-month sentence for conspiracy to commit Hobbs Act robbery and 18 U.S.C. § 924(c) in which he "participated in two robberies and personally used a firearm against the victims on both occasions." Id.

Both of these cases involved shooting guns – and doing so under extremely aggravating circumstances: hitting a victim in the leg, such that staples were required to close his wound, and towards pursuing police officers, respectively. In both cases, there were innocent bystanders present. Those are some of the most aggravating facts one can imagine – and are a far cry from Mr. Lucas' conduct in this case. Indeed, the gun Mr. Lucas pled guilty to possessing was inside a drawer, inside a locked bedroom, inside of an apartment. Therefore, unlike the defendants in Morales and Gomez, Mr. Lucas did not shoot the gun and did not cause injury to a victim, and did not endanger a police officer, a bystander, nor anyone else.

In addition, in Morales and Gomez, the sentencing courts were also clearly anchored by the defendants' previous sentences; in Morales, the defendant had previously been sentenced to 60 months and the court went 6 months higher; in Gomez, the defendant was still serving a 120-month federal sentence and the court gave him 120 months again. The courts likely felt compelled not to give sentences shorter than those the defendants had previously received, even though the guidelines were significantly lower and the defendants asked for lower sentences. Here, the Court has no such difficulties to grapple with: the guidelines do not suggest a shorter sentence than Mr. Lucas previously received and the defense is not advocating for a sentence in this case that is shorter than his prior one.

Thus, Mr. Lucas' case is clearly distinguishable from both outlier cases cited by the government.

**The government's arguments are insufficient to justify the sentence it requests.**

The other reasons articulated by the government for a sentence more than three times the bottom of the range should also be rejected. See Gov't Sent. Ltr. 4-5. The government points to (1) the December 21 incident, (2) the seriousness of the offense, (3) the need for deterrence given Mr. Lucas' history, (4) his violation of supervised release by testing positive for marijuana, and (5) the recorded phone call in which Mr. Lucas spoke about A.U.S.A. Fletcher. Id. Yet, none of these reasons are sufficient, individually or in combination, to support the government's outsized request. We address each in turn.

First, the defense continues to deny certain facts from the December 21 incident. See Dkt. Nos. 34, 39. As the Court will learn at the hearing it ordered, the complaining witness' claims about being hit in the face with a gun are wholly uncorroborated – not by another witness, not by medical records, and not by photographs. But, even if the Court were to find in the government's favor at the hearing, such a finding still would not support the government's sentencing request. While using a gun to hit someone is an extremely bad choice, in this case, even under the government's version of events, the hit did not cause any injuries, it took place in

a single moment, and it was during a fight that both parties were verbally escalating. That incident – even if the Court finds all the facts in the government's favor – would still not be enough to triple the guidelines.

Second, we agree with the government that "by its nature," 18 U.S.C. § 922(g)(1) is a serious offense. But that seriousness is amply accounted for by the sentencing guidelines, i.e. U.S.S.G. § 2K2.1, which was applied here. Indeed, that conclusion is supported by the fact that hundreds of sentencing courts in this district and nationally have awarded guidelines and below-guidelines sentences in gun cases. See JSIN and U.S.S.C. data, supra.

Third, Mr. Lucas' history, while also serious, is already accounted for by the guidelines – in both § 2K2.1 and his criminal history category. The government mischaracterizes Judge Stein's previous sentence as "extraordinarily generous," Gov't Sent. Ltr. at 4. A 9-month downward variance, when the guidelines were 21 to 27 months, and the government specifically advocated for a sentence at the bottom of the range, see Lucas Sent. Ltr. at 7, is not "extraordinary." To the contrary, as described above, it was within the completely ordinary practices of sentencing judges in this district.

Fourth, the government's reliance on Mr. Lucas' performance on supervised release to justify its outsized sentencing request is also misplaced. Violating the terms of one's supervised release is serious in its own right and constitutes a separate breach of trust – and will justify its own sentence.[4] Indeed, Mr. Lucas will be sentenced by this Court for any violations of supervised release proven at the VOSR hearing on docket 21 Cr. 382. To use the fact of his alleged violations of supervised release as justification for a sentence three times higher than the guidelines on the instant case is wrong.[5]

---

[4] "The [Sentencing] Commission has concluded that the determination of the appropriate sentence on any new criminal conviction should be a separate determination" from the violation of supervised release penalty. See U.S.S.G. Chap. 7, Part B.

[5] Mr. Lucas is far from the only defendant to be convicted for a new gun case while on federal supervised release. See, e.g., United States v. Donnell Harris, 16 Cr. 813 (RJS), Dkt. Nos. 36, 41 (sentencing defendant to 57 months on his new § 922(g) case, in which he "pointed a long silver and black firearm" at a stranger in a car parked on the street, when the guidelines were 46 to 57 months), 12 Cr. 31 (VM), Dkt. No. 1617 (sentencing the defendant to a concurrent 24 months for his violation of supervised release); United States v. Jamar Baker, 22 Cr. 200 (LAK), Dkt. Nos. 24, 29 (sentencing defendant to 30 months on his new § 922(g) case, in which he "used his vehicle to strike the passenger side of" the vehicle of an off-duty NYPD officer, while both cars were in motion, and "[t]he defendant then pointed a gun outside of his driver's side window and fired at least two rounds at Victim-1's vehicle," when the guidelines were 24 to 30 months); 14 Cr. 512 (LAK), Dkt. No. 92 (sentencing defendant to 10 months' imprisonment consecutive to the new case for his violation of supervised release); see also United States v. Malik McCollum, 23 Cr. 323 (AT), 21 Cr. 733 (AT), Dkt. Nos. 76, 81 (sentencing defendant who "discharged [a] firearm on a crowded street" when his stipulated guidelines were 57 to 71 months (and Probation calculated the range as 84 to 104 months) to 60 months' imprisonment on his second indictment, while he was on bail for another § 922(g) indictment, for which he was sentenced to a concurrent 21 months when the guidelines range was 15 to 21 months).

4

Fifth, the statements Mr. Lucas made on the phone to a personal acquaintance, while regrettable, are not enough to justify the government's requested sentence. On the call, Mr. Lucas was clearly expressing frustration – frustration with how long the case was taking and frustration with the government's arguments during the bail hearing earlier that day, which he felt were inconsistent with his character and his history. That frustration is understandable and would not be at all problematic, but for the words he added: "I'd have punched her dead in her face." For that, Mr. Lucas apologizes. Those words were an inappropriate way for him to express frustration. But it is also wrong for the government to characterize this as a "threat" of violence; indeed, Mr. Lucas was already talking in the past tense – about a court appearance that was over, in which he did not act aggressively or inappropriately in any way. Mr. Lucas made no reference to any type of future violence and there was no discussion of any action whatsoever. Words alone, expressed in a moment of frustration, describing an occasion that had already passed, are also not enough to justify the government's requested sentence.

**The Court should impose the sentence requested by the defense.**

The U.S. Probation Department – which is well acquainted with Mr. Lucas and his background (and, sided with the government regarding the defense's factual objections to the December 21 incident in the PSR) – still recommended a sentence at the bottom of the guidelines range: 15 months' imprisonment.

The defense requested a slight downward variance to one year and one day, to be followed by supervised release, with six months in a halfway house, alternative to incarceration programming, intensive mental health treatment, and outpatient drug treatment. See Lucas Sent. Ltr. Mr. Lucas' personal background, including his acute trauma history; his substance abuse struggles; his previous success on Pretrial Services supervision; the essential role he plays as a loving father to his son and step-sons; the inhumane conditions he is subject to at MDC Brooklyn; and the robust re-entry planning we have proposed justify our requested sentence. See id. Our requested sentence is sufficient to achieve the statutory goals of sentencing and is consistent with the interests of justice.

Respectfully submitted,
/s/
Sylvie Levine
Assistant Federal Defender
212-417-8729