O8EDLucP

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

       v.                          24 Cr. 00143 (AS)

REALITY LUCAS,

                            Plea
        Defendant.

------------------------------x

                         New York, N.Y.
                         August 14, 2024
                         4:00 p.m.

Before:

               HON. ARUN SUBRAMANIAN,

                         U.S. District Judge

                 APPEARANCES

DAMIAN WILLIAMS
    United States Attorney for the
    Southern District of New York
CAMILLE FLETCHER
    Assistant United States Attorney

SYLVIE LEVINE
    Attorney for Defendant

O8EDLucP

(Case called.)

THE COURT:  Can we have appearances, starting with the government?

MS. FLETCHER:  Good afternoon, your Honor.  Camille Fletcher for the United States.

THE COURT:  Good afternoon.

MS. LEVINE:  Good afternoon, your Honor.  The Federal Defenders of New York, by Sylvie Levine, on behalf of Mr. Lucas.

THE COURT:  Good afternoon.

Good afternoon, Mr. Lucas.

Ms. Levine, does your client have an application?

MS. LEVINE:  Yes, your Honor.  At this time, Mr. Lucas intends to withdraw his previously entered plea of not guilty in 24 CR 143, and intends to plead guilty to the single count of the indictment.

THE COURT:  All right.  Am I correct that, as per the alleged violations of supervised release, those will remain outstanding?

MS. LEVINE:  Yes.  So what I'm hoping is if it's okay with the Court, is we'll pick a sentencing date for the 24 CR 143 case.  The expectation would be that between now and the sentencing date, I do expect the parties to reach a plan with regard to the V.O.S.R.

There is a big outstanding factual question that may

O8EDLucP

require a *Fatico*, which would be, as a substantive matter, the same hearing as the V.O.S.R. hearing.

THE COURT:  Yes.  I gathered that from the *Pimentel* letter.

MS. LEVINE:  Right.  So I think, not to get too far ahead, but we just conferred with the court staff and with each other and I think the plan would be to ask the Court to set a sentencing date for the first week of December and to set a deadline for the government to alert both your Honor and me and Mr. Lucas if they intend to proceed with that four-point enhancement, those specifications on the V.O.S.R., and, if so, to schedule a hearing.

THE COURT:  Okay.  Well, that plan is acceptable to the Court, but we're getting way ahead of ourselves.

MS. LEVINE:  Yes.  Agreed.

THE COURT:  Mr. Lucas, before I accept your guilty plea, I'm going to ask you a bunch of questions, and I apologize in advance, because it's a very long list of questions, but I hope you understand that because pleading guilty is such an important part of any criminal case, it's really important for me to tell you about all the rights that you'll be giving up if you plead guilty so that you can really make an informed decision about that, okay?

So I apologize -- I say that only because I'm going to ask you a ton of questions, and I wanted you to know why I'm

O8EDLucP

asking you all these questions.

Okay. So the reason I'm going to ask you all these questions is so I can establish to my satisfaction you wish to plead guilty because you are guilty and not for some other reason, and also to establish that you know what you'll be giving up by pleading guilty.

If you don't understand any of my questions or if you want to consult with Ms. Levine at any time for any reason, just let me know and I will give you as much time as you need to do that, because it is essential, in order to have a valid plea, that you understand each question before you answer.

I'm going to ask Mr. Hernandez to put you under oath, and then we'll proceed.

Mr. Hernandez.

(Defendant sworn.)

THE DEPUTY CLERK: Thank you. You may be seated.

THE COURT: Mr. Lucas, you are now under oath, which means that if you answer any of my questions falsely, you may be prosecuted for the separate crime of perjury.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: All right. What is your full name?

THE DEFENDANT: Reality Lucas.

THE COURT: How old are you?

THE DEFENDANT: Thirty-two.

O8EDLucP

THE COURT:  How far did you go in school?

THE DEFENDANT:  High school diploma.

THE COURT:  Was it in the city?

THE DEFENDANT:  Long Island.

THE COURT:  What is the name of the school?

THE DEFENDANT:  Long Beach High School.

THE COURT:  Have you ever been treated for any kind of mental illness?

THE DEFENDANT:  No.

THE COURT:  You've never been put in the hospital for any kind of mental illness, anything like that?

THE DEFENDANT:  No.

THE COURT:  Have you ever been under the care of a doctor or mental health professional, like a psychiatrist, for any kind of mental illness, depression, anxiety, anything like that?

THE DEFENDANT:  No.

THE COURT:  Have you ever been treated for any type of addiction, including drug or alcohol addiction?

THE DEFENDANT:  Yes.

THE COURT:  What kind of treatment have you had?

THE DEFENDANT:  CTI, Palladia CTI, and I was currently in Samaritan Village Daytop.

THE COURT:  Is there anything in connection -- for what kind of addiction were you having treatment?

O8EDLucP

THE DEFENDANT:  Ecstasy and marijuana.

THE COURT:  Have you taken Ecstasy or marijuana in the past two days?

THE DEFENDANT:  No.

THE COURT:  Okay.  When's the last time you took Ecstasy or marijuana?

THE DEFENDANT:  I haven't took Ecstasy since my last case, and I haven't smoked weed since I've been arrested.

THE COURT:  Okay.  Is there anything surrounding the issues you've had with addiction that would make it hard for you to understand what's happening today in the courtroom?

THE DEFENDANT:  No.

THE COURT:  You feel groggy?

THE DEFENDANT:  No.

THE COURT:  Do you feel good today?

THE DEFENDANT:  Yes.

THE COURT:  All right.  You understand what's going on?

THE DEFENDANT:  Yes, I understand.

THE COURT:  Have you taken any drugs, medicine, or pills, or had any alcohol in the past two days?

THE DEFENDANT:  No.

THE COURT:  So you feel like your mind is clear today?

THE DEFENDANT:  Yes.

THE COURT:  All right.  You understand what's

O8EDLucP

happening?

THE DEFENDANT:  Yes.

THE COURT:  That you're going to go through a plea colloquy, everything like that?

THE DEFENDANT:  Yes.

THE COURT:  Ms. Levine, have you discussed this matter with Mr. Lucas?

MS. LEVINE:  I have, your Honor.

THE COURT:  Does he understand the rights he would be waiving by pleading guilty?

MS. LEVINE:  I believe he does.

THE COURT:  Is he capable of understanding the nature of these proceedings?

MS. LEVINE:  I believe so.

THE COURT:  Do either counsel have any doubt as to the defendant's competence to plead at this time?

MS. LEVINE:  No, your Honor.

MS. FLETCHER:  No, your Honor.

THE COURT:  On the basis of Mr. Lucas's responses to my questions, my observations of him here in court, and the representations of counsel, I find that the defendant is fully competent to enter an informed plea of guilty at this time.

Now, Mr. Lucas, have you received a copy of the indictment with the charge against you?

THE DEFENDANT:  Yes.

O8EDLucP

THE COURT:  Did you read it?

THE DEFENDANT:  Yes.

THE COURT:  Now, do you want me to read it to you or summarize it?

THE DEFENDANT:  No.

THE COURT:  All right.  So in legal parlance, we say do you waive the public reading of this indictment?

THE DEFENDANT:  Yes.

THE COURT:  All right.  Have you had enough of a chance to discuss with Ms. Levine the charge to which you intend to plead guilty?

THE DEFENDANT:  Yes.

THE COURT:  Does that include any possible defenses you might have to that charge?

THE DEFENDANT:  Yes.

THE COURT:  Has Ms. Levine explained to you the consequences of entering a plea of guilty?

THE DEFENDANT:  Yes.

THE COURT:  Are you satisfied with Ms. Levine's representation?

THE DEFENDANT:  Yes.

THE COURT:  All right.  Mr. Lucas, I'm now going to explain certain rights that you have related to Count One of the indictment.  These are rights you'll be giving up if you enter a guilty plea on that count.  Please listen carefully to

O8EDLucP

what I'm about to say, and if you do not understand something, stop me and Ms. Levine or I will explain the matter more fully.

Under the Constitution and the laws of the United States, you have a right to plead not guilty to the charge in the indictment.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  If you did plead not guilty, you would be entitled to a speedy and public trial by a jury on the charge contained in the indictment.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  At a trial, you would be presumed to be innocent, and you would not have to prove that you were innocent.  Instead, the government would be required to prove you guilty by competent evidence beyond a reasonable doubt before the jury could find you guilty.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  In order to find you guilty, a jury of 12 people would have to agree unanimously that you were guilty.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  At that trial and at every stage of your case, you would be entitled to be represented by a lawyer, and

O8EDLucP

if you could not afford a lawyer, one would be appointed at public expense, that's free of cost to you, to represent you.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  During a trial, the witnesses for the government would have to come to court and testify in your presence.  Your lawyer could cross-examine the witnesses for the government, object to evidence offered by the government, and offer evidence on your own behalf if you so desired.  You would have the right to have subpoenas issued or other process used to compel witnesses to testify in your defense.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Again, I apologize, it's a long list, but I want you to just listen.  Any questions you have, feel free to ask.

At a trial, although you would have the right to testify if you chose to do so, you would also have the right not to testify, and if you decided not to testify, no one, including the jury, could draw any inference or suggestion of guilt from the fact that you did not testify.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Before trial, you would have an opportunity to seek suppression of some or all of the evidence

O8EDLucP

the government may use against you at trial on the ground that your constitutional rights were violated.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Before trial, the government would also be required to produce discovery materials to you under Federal Rule of Criminal Procedure 16, and would be further required to produce material pursuant some court cases, *Brady v. Maryland*, federal Rule of Criminal Procedure 5(f), and impeachment material pursuant to *Giglio v. United States* and what we call Jencks Act material.

Do you understand the government would have to turn over that kind of material to you so you can look at it before trial and use it in your defense?

THE DEFENDANT:  Yes.

THE COURT:  If you were convicted at a trial, you would have the right to appeal that verdict and any pretrial rulings that I made.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  If you plead guilty, you will also have to give up your right not to incriminate yourself, because I may ask you questions about what you did in order to satisfy myself that you are guilty as charged, and you would have to admit and acknowledge your guilt.

O8EDLucP

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  If you plead guilty and if I accept your plea, you'll have to give up your right to a trial and the other rights I have just discussed, other than a right to a lawyer, which you have regardless of whether or not you plead guilty.  But there will be no trial and I will enter a judgment of guilty and sentence you on the basis of your plea after I've considered a presentence report and whatever submissions I get from your lawyer and the government.

There will be no appeal with respect to whether the government could use the evidence it has against you or with respect to whether you did or did not commit this crime.

Do you understand all that?

THE DEFENDANT:  Yes.

THE COURT:  Even now, as you are entering this plea, you have the right to change your mind and plead not guilty and go to trial on the charge in the indictment.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand each and every one of the rights I've explained to you?

THE DEFENDANT:  Yes.

THE COURT:  Mr. Lucas, are you willing to give up your right to a trial and the other rights I've just discussed?

O8EDLucP

THE DEFENDANT:  Yes.

THE COURT:  Mr. Lucas, do you understand you're charged in Count One of the indictment with possession of a firearm after a felony conviction?

THE DEFENDANT:  Yes.

THE COURT:  Ms. Fletcher, would you mind stating the elements of the offense in question?

MS. FLETCHER:  Yes, your Honor.

The elements for the offense charged in Count One of the indictment are as follows:

The defendant knowingly possessed a firearm and ammunition;

The defendant knew he had been previously convicted in a court of a crime punishable by imprisonment for a term exceeding one year;

And that the firearm or ammunition was shipped or transported in interstate or foreign commerce.

THE COURT:  Okay.  Then there would also be -- have to have proof of venue; is that correct?

MS. FLETCHER:  By a preponderance, your Honor.  Thank you.

THE COURT:  Okay.  Mr. Lucas, do you understand that if you were to go to trial, the government would have to prove all those elements Ms. Fletcher just discussed beyond a reasonable doubt; and venue, but only by preponderance of the

O8EDLucP

evidence?

THE DEFENDANT:  Yes.

THE COURT:  Now I'm going to tell you the maximum possible penalty for the charge in Count One of the indictment.

The maximum means the most that could possibly be imposed.  That does not mean that's what you're going to receive, but you have to understand that by pleading guilty, you are exposing yourself to the possibility of receiving any combination of punishments up to the maximum that I'm going to describe.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  First, I'm going to tell you about the possible restrictions on your liberty.

Now, Ms. Fletcher, am I correct the maximum term of imprisonment for this crime is 15 years?

MS. FLETCHER:  That's correct, your Honor.

THE COURT:  Okay.  Do you understand that maximum term of imprisonment, Mr. Lucas?

THE DEFENDANT:  Yes.

THE COURT:  That term of imprisonment could be followed up by three years of supervised release.  Supervised release means you will be subject to supervision by the Probation Department.  There will be rules of supervised release that you will have to follow, and if you violate those

O8EDLucP

rules, you can be returned to prison without a jury trial to serve additional time, with no credit for time you served in prison as a result of your sentence and no credit for any time spent on post-release supervision.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  You should understand that there is no parole in the federal system, and that if you are sentenced to prison, you will not be released early on parole.  There is a limited opportunity to earn credit for good behavior, but you will have to serve at least 85 percent of the time you are sentenced to.

Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  All right.  In addition to those restrictions on your liberty, the maximum possible punishment also includes certain financial penalties.  The maximum allowable fine is $250,000.  In addition, I can order restitution to any person or entity injured as a result of your criminal conduct.

Ms. Fletcher, is there any basis for restitution in this case?

MS. FLETCHER:  No, your Honor.

THE COURT:  Finally, I must order a mandatory special assessments of $100.

O8EDLucP

Do you understand that these are the maximum possible penalties?

THE DEFENDANT:  Yes.

THE COURT:  Mr. Lucas, are you a United States citizen?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand, as a result of your guilty plea, you may lose certain valuable civil rights to the extent you have them or could otherwise obtain them now, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess any kind of firearm?

THE DEFENDANT:  Yes.

THE COURT:  Are you serving any other sentence, state, or federal, or being prosecuted in state court for any crime?

THE DEFENDANT:  No.

MS. LEVINE:  Except for the case that's before the Court obviously.

THE COURT:  Obviously.  Understood.

MS. FLETCHER:  In my case, you mean the older -- the 2021 case that he's still serving a term of supervised release?

THE COURT:  You're saying the case in which there is an alleged violation of supervised release?

MS. FLETCHER:  That is correct, your Honor.

THE COURT:  Aside from that case, any other case

O8EDLucP

ongoing at the present time, Mr. Lucas?

THE DEFENDANT:  No.

THE COURT:  Ms. Levine, is that correct?

MS. LEVINE:  As far as I know, yes.

THE COURT:  Okay.  Just so I'm making sure Mr. Lucas understands, if the government were to proceed on the violation, how would -- would the sentence on the violation and any potential sentence on this count potentially run consecutively?

MS. FLETCHER:  Your Honor, that is -- that would be up to the Court.  That is within the Court's right.

The other case, the 2021 case, is an entirely different case -- is an entirely different case, violations of supervised release, yet the appropriate sentence and that would get dealt with separately.  We are only here right now under 24 CR --

THE COURT:  Understood.

So, Mr. Lucas, you should understand that those two proceedings, the one on the violation and the one that we're talking about right now, that you're thinking about whether you want to plead guilty to, that the sentences in those two cases could run consecutively.

THE DEFENDANT:  Yes.  I understand that.

THE COURT:  Okay.  I just wanted to make sure you understood that.

Case 1:24-cr-00143-AS    Document 54    Filed 01/14/25    Page 18 of 28    18

O8EDLucP

Do you understand if your lawyer or anyone else has attempted to predict what you sentence will be in this case that their prediction could be wrong?

No one, not your lawyer, not the government's lawyer, no one can give you any assurance of what your sentence will be, since I am going to decide your sentence and I am not going to do that now.  I am going to wait until I receive a presentence report prepared by the Probation Department, do my own independent calculation of the sentencing guidelines range, consider it and any possible departures from it, and also determine what a reasonable sentence is for you based on the sentencing factors contained in the statute found at 18 U.S.C. 3553(a).

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Have you discussed kind of how sentencing works with Ms. Levine?

THE DEFENDANT:  Yes.

THE COURT:  All right.  Even if your sentence is different from what your lawyer or anyone else has told you it might be, even if it's different from what you expect or from what is contained in the government's *Pimentel* letter, you will still be bound by your guilty plea, and you will not be allowed to withdraw your plea of guilty.

Do you understand that?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

O8EDLucP

THE DEFENDANT:  Yes.

THE COURT:  All right.  Now I understand there's no plea agreement between you, your counsel, and the counsel for the government.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Nevertheless, pursuant to the instructions of the Second Circuit in *United States v. Pimentel*, the government has prepared a letter setting forth its view of what the sentencing guidelines will be at sentencing.

I have a copy of that letter, which I'll mark as Court Exhibit One.

Do we have an actual original of that, Ms. Fletcher, or is it fine to use the copy?

We can use the copy.

MS. FLETCHER:  The letter's digital, your Honor.

THE COURT:  All right.  So we'll mark it as Court Exhibit One.

Mr. Lucas, have you seen that letter?

THE DEFENDANT:  Yes.

THE COURT:  Did you discuss it with Ms. Levine before today?

THE DEFENDANT:  Yes.

THE COURT:  Did you fully understand what the government is saying in that letter?

O8EDLucP

THE DEFENDANT:  Yes.

THE COURT:  You understand that the range that's set forth in the letter is not really binding on anybody?

THE DEFENDANT:  I understand.

THE COURT:  Okay.  So it's not binding on the government, it's not binding on anything you would say, and, most importantly, it's not binding on me.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  All right.  I have my own obligation to determine the correct guidelines range and what the appropriate sentence will be in your case.  I'm not saying I will come up with any range different from the one contained in the government's letter.  I may agree or I may disagree.  But, in any event, whatever sentence I impose, I will not let you withdraw your plea even if the range I determine is higher than what you expected.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Has anyone offered you any inducement or threatened you or forced you to plead guilty here today?

THE DEFENDANT:  No.

THE COURT:  Has anyone made a promise to you as to what your sentence will be?

THE DEFENDANT:  No.

O8EDLucP

THE COURT:  Mr. Lucas, have you clearly understood everything that's happened here today?

THE DEFENDANT:  Yes.

THE COURT:  Now that you've been advised of the charge against you, the possible penalties you face, and the rights you are giving up, is it still your wish to plead guilty to the offense of possession of a firearm after a felony conviction?

THE DEFENDANT:  Yes.

THE COURT:  Ms. Fletcher, would you please summarize what it is you would expect to prove if this case went to trial?

MS. FLETCHER:  Yes, your Honor.  The evidence at trial to prove that the defendant did, in fact, possess a firearm and ammunition after serving a term of imprisonment of more than a year would include witness testimony with respect to the defendant's ex-girlfriend who testified that he, in fact, hit her in the face with a gun approximately a month before the firearm was found in the defendant's apartment.  We expect testimony from other witnesses who will testify that the defendant did, in fact, live in that apartment in the locked bedroom where the firearm and ammunition was found.  We have surveillance footage showing that the defendant exited the apartment and used a key to the enter that apartment where the firearm was found, as well as photographs of the firearms and ammunition; photographs of prescriptions and other documents,

O8EDLucP

such as mail, the defendant's work ID, cell phone discovered in the room right next to where the firearm was located; as well as social media photographs showing that the clothing and many of the other items found in the defendant's bedroom matched social media posts that he posted to his social media account.

The government would also establish that the defendant had been twice convicted of a felony, and had served on one of them two years -- approximately two years in prison and more than a year on a second conviction, as well as there would be testimony from an ATF agent establishing that both the firearm and the ammunition traveled in interstate commerce.

THE COURT:  Thank you very much.

The apartment and the events that you described occurred within the district?

MS. FLETCHER:  That is correct, your Honor.  They occurred in New York City, in Manhattan.

THE COURT:  Thank you very much.

Now, Mr. Lucas, could you tell me in your own words what you did that makes you believe that you are guilty of the charge in the indictment?

THE DEFENDANT:  On January 17, I possessed a firearm in New York.  I knew that before that date I had been convicted of a felony.  I knew it was wrong, and I'm sorry for this decision.

THE COURT:  All right.  I appreciate that.  I know

O8EDLucP

you're reading off a statement. Is that something you prepared with Ms. Levine?

THE DEFENDANT: Yes.

THE COURT: Okay. And you mentioned this, but when you were did those things, you knew what you were doing was wrong and illegal?

THE DEFENDANT: Yes.

THE COURT: Did anyone threaten or force you to do those things?

THE DEFENDANT: No.

THE COURT: Ms. Levine, do you know of any valid defense that would prevail at trial or do you know of any reason why your client should not be permitted to plead guilty?

MS. LEVINE: No, sir.

THE COURT: Ms. Fletcher, are there any additional questions that you would like me to ask of Mr. Lucas?

MS. FLETCHER: Yes, your Honor.

Can you just confirm that he possessed the firearm and ammunition in Manhattan?

THE COURT: Mr. Lucas, when you had the gun and the ammunition, was that in Manhattan?

THE DEFENDANT: Yes.

THE COURT: All right. Now, do both counsel agree that there is a sufficient factual predicate for a guilty plea?

MS. FLETCHER: Yes, your Honor.

O8EDLucP

MS. LEVINE:  Yes, your Honor.

THE COURT:  Do either counsel know of any reason why I should not accept the defendant's plea of guilty?

MS. FLETCHER:  No, your Honor.

MS. LEVINE:  No.

THE COURT:  All right.  Mr. Lucas, how do you now plead to the charge in Count One of the indictment, possession of a firearm after felony conviction under 18 U.S.C. 922(g)(1), guilty or not guilty?

THE DEFENDANT:  Guilty.

THE COURT:  Are you, in fact, guilty of that charge?

THE DEFENDANT:  Yes.

THE COURT:  Are you pleading guilty voluntarily and of your own free will?

THE DEFENDANT:  Yes.

THE COURT:  There is also a forfeiture allegation in the indictment.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  Do you admit the forfeiture allegation with respect to Count One of the indictment?

THE DEFENDANT:  Yes.

THE COURT:  All right.  Mr. Lucas, because you acknowledge that you are, in fact, guilty of the offense of possession of a firearm after a felony conviction pursuant to

O8EDLucP

18 U.S.C. 922(g)(1), because I am satisfied that you know of your rights, including your right to go to trial, and that you are aware of the consequences of your plea, including the sentence which may be imposed, and because I find that you are knowingly and voluntarily pleading guilty, I accept your guilty plea and enter a judgment of guilty to the offense of possession of a firearm after a felony conviction pursuant to 18 U.S.C. 922(g)(1).

Now, Mr. Lucas, the Probation Department will want to interview you about the presentence report.  You've probably heard of this, so you know they're going to want to speak to you.  If you choose to speak to them, just make sure that anything you say to them is truthful and accurate.

You can and should have Ms. Levine with you during that interview, and I'm going to review the report really carefully and make sure I read it all and digest everything that's in there.

So you have a right to review the report and make sure everything in there is accurate, and if there's a problem with anything that's in the report, you can object to it, talk to Ms. Levine, and make sure that you correct any errors and put in any objections that you have.  Okay?

Make sure you read it.  If there's any mistakes whatsoever, point them out to Ms. Levine, so she can bring them to my attention before a sentence.

O8EDLucP

THE DEFENDANT:  Okay.

THE COURT:  I will require that Ms. Levine be present for any interview in connection with that report.

Mr. Hernandez, I have a date for sentencing of December 5th at 2:00 p.m., but I want to make sure that works with the parties' proposal with reference to the violation and any ancillary proceedings we need to have before sentencing.

MS. FLETCHER:  December 5th works for the government, your Honor.

MS. LEVINE:  Your Honor, that date is fine.  We were hoping to do it earlier in the day if that's possible with the Court's calendar.

THE COURT:  That's fine.  Would 10:00 a.m. work?

MS. LEVINE:  That would be great.

THE COURT:  Okay.  Mr. Hernandez, any conflicts at 10:00 a.m.?

THE DEPUTY CLERK:  No conflicts, your Honor.

THE COURT:  All right.  So we'll set it for December 5th at 10:00 a.m.

I will direct the government provide the probation officer with its factual statement within seven days.

Defense counsel must arrange for the defendant to be interviewed by the probation department within the next two weeks.

All right.  Anything else, Ms. Fletcher, that we need

O8EDLucP

to take care of today?

MS. FLETCHER:  Yes, your Honor.

In regard to the open specifications in the 2021 case, the parties propose -- I would propose and I believe defense is amenable to this, to allow the government -- because there is some -- there is a potential factual dispute that would affect both the guidelines calculation in this case, as well as the -- it's the same factual circumstance to prove out the specifications in the other case.  The government would propose putting in a submission no later than October 4th to the Court letting the Court know whether it will need a *Fatico* and/or simultaneous of a V.O.S.R. proceeding, and ask to schedule it at that point for some point in October, potentially early November.

And we would have that proceeding and that should give us enough time to resolve any issues at that point before the December sentencing.

THE COURT:  That schedule works, and I hate to put you to the work, but would you mind putting in a very short letter that outlines that proposal?  I'll go ahead and so order it, just so it's reflected on the docket.

MS. FLETCHER:  That's fine, your Honor.

So October 4th, the government will put in a status letter and let the Court know it's intention regarding any *Fatico* and pending specifications.

O8EDLucP

THE COURT:  Let me make your life easier.  If it's all going to be in the October 4th submission, then we have now all agreed it will come in on October 4th.  So I think that's handled.  You don't need to put anything in.

MS. FLETCHER:  All right.  Great.  Thank you, your Honor.

THE COURT:  All right.  Ms. Levine, anything on your part?

MS. LEVINE:  Just one second, your Honor.

Nothing further, your Honor.  Thank you.

THE COURT:  All right.  Thank you very much, Ms. Levine.

Thank you very much, Mr. Lucas.

We are adjourned.  Thank you very much.

MS. FLETCHER:  Thank you, Judge.

(Adjourned)